IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D. L. TAYLOR, C-05467,<br><br>　　　　Plaintiff(s),<br><br>v.<br><br>M. J. JOHNSON, Correctional Officer,<br><br>　　　　Defendant(s). | No. C 12-3424 CRB (PR)<br><br>ORDER DENYING DEFENDANT'S MOTION FOR DISMISSAL AND/OR SUMMARY JUDGMENT, AND REFERRING MATTER FOR SETTLEMENT PROCEEDINGS<br><br>(Dkt. #52 & 74) |

I.

Plaintiff D. L. Taylor is currently incarcerated at California State Prison, Corcoran (CSP – COR). But on June 29, 2012, while he was incarcerated at Pelican Bay State Prison (PBSP), plaintiff filed a pro se prisoner complaint under 42 U.S.C. § 1983 challenging various conditions of his confinement at PBSP. After several rounds of dismissals with leave to amend and amended complaints, plaintiff filed a verified Fifth Amended Complaint (FAC) for damages under § 1983 alleging that on February 29, 2012, while he was at PBSP, Correctional Officer M. J. Johnson used excessive force against him. Plaintiff specifically alleges that, while he was on the floor of his cell talking to a female correctional officer thru the gap at the bottom of the closed cell door, Johnson "began to repeatedly kick plaintiff's cell door with all of his might," causing the cell door to hit plaintiff in the mouth and "knocking out a tooth" and chipping one on his "partial." Docket #29 at 4.

Per order filed on April 25, 2014, the court screened the FAC under 28 U.S.C. § 1915A and found that, liberally construed, plaintiff's allegations that "Johnson kicked plaintiff's cell door so hard that it caused the cell door to hit plaintiff in the mouth and knock out a tooth and chip one on his partial appear to state an arguably cognizable claim for damages under § 1983 for use of excessive force" and ordered the claim served on Johnson. Dkt. #31 at 2.

Defendant Johnson now moves for dismissal under Federal Rule of Civil Procedure 12(b)(6) on the ground that the operative FAC fails to allege facts sufficient to state a claim for use of excessive force in violation of the Eighth Amendment and instead shows that defendant is entitled to qualified immunity. Defendant also moves for summary judgment under Federal Rule of Civil Procedure 56 on the ground that plaintiff failed to properly exhaust available administrative remedies before filing suit, as required by the Prison Litigation Reform Act (PLRA). After being advised of what is required of him to oppose defendant's motion, plaintiff filed an opposition and defendant filed a reply.

II.

Dismissal is proper where the complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). A motion to dismiss should be granted if the complaint does not proffer "enough facts to state a claim for relief that is plausible on its face." Id. at 570.

The court must accept as true all material allegations in the complaint, but it need not accept as true "legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged." Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). Review is limited to the contents of the complaint, including documents physically attached to the complaint or documents the complaint necessarily relies on and whose authenticity is not contested. Lee v. County of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). The court also may take judicial notice of facts that are not subject to reasonable dispute. Id.

It is well established that prison officials violate the Eighth Amendment if they apply force maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Id. at 7.

Defendant moves for dismissal under Rule 12(b)(6) on the ground that the operative FAC fails to allege facts sufficient to state a claim for use of excessive force in violation of the Eighth Amendment and instead shows that defendant is entitled to qualified immunity. According to defendant, plaintiff has not alleged facts showing that defendant knew that, when he kicked plaintiff's closed cell door, plaintiff was on the other side of the door with his face close to the gap at the bottom of the closed cell door. He argues that plaintiff's allegations therefore state no more than a claim for negligence not actionable under § 1983.

        Defendant reads the operative FAC too narrowly and selectively. In the FAC, plaintiff alleges, under penalty of perjury, that when correctional officer Bryson stopped by his cell to give him his medication, plaintiff commented that he had not seen her in years and started talking and trying to catch up, telling her that he was engaged and trying to show her a photograph of his fiancee. But defendant yelled at him from two cells down to "shut the fuck up" and quickly came over to "slam my food slot shut." Dkt. #29 at 4. Plaintiff then got down on the floor and tried to pass the photograph to Bryson thru the gap at the bottom of the cell door. But defendant intercepted it and "kicked my photograph back under the door." Id. Plaintiff proceeded to put his "mouth close to the gap at the bottom of the cell door" and complain out loud how "sexist" and "racist" defendant was behaving. Id. Defendant immediately responded by "repeatedly kick[ing] the cell door with all of his might" and "causing the cell door to hit me in my mouth knocking out a tooth and to chip one on my partial." Id.

        Taken as true, plaintiff's factual allegations are enough "to state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570. A trier of fact reasonably could find that defendant knew that plaintiff's face was close to the gap at the bottom of the cell door when defendant started repeatedly kicking the door with all his might because a trier of fact reasonably could find that defendant heard plaintiff yell out complaints thru the gap at the bottom of the cell door just before defendant started kicking the cell door. A trier of fact therefore reasonably could find that defendant used excessive force in violation of plaintiff's Eighth Amendment rights because defendant applied force maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline. See Hudson, 503 U.S. at 6-7. It matters not that defendant's only physical contact with plaintiff was via a closed door, see Robins v.

 1   Meecham, 60 F.3d 1436, 1439-41 (9th Cir. 1995) (standard for determining
 2   whether excessive force was used in violation of 8th Amendment "is whether the
 3   defendants applied force 'maliciously and sadistically for the very purpose of
 4   causing harm,' – that is any harm;" this means, for example, that prison officials
 5   violate the 8th Amendment when they exert excessive force against one inmate
 6   which results in injury to another inmate as well), or that plaintiff's injuries – a
 7   knocked out tooth and a chip to one on his partial – were not significant, see
 8   Hudson, 503 U.S. at 10 (use of force that caused "bruises, swelling, loosened
 9   teeth, and a cracked dental plate" not de minimis for 8th Amendment purposes).

   Nor can it be said that defendant is entitled to qualified immunity. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). But at this point in the proceedings, when plaintiff's allegations must be taken in the light most favorable to him, qualified immunity is not in order because it cannot be said that the facts alleged show that defendant's conduct did not violate a constitutional right, or that defendant had a reasonable, but mistaken, belief about the facts or about what the law required under the circumstances. See Saucier v. Katz, 533 U.S. 192, 201-02 (2001). Put simply, it cannot be said that defendant could reasonably believe that it was lawful to repeatedly kick plaintiff's cell door with all of his might while knowing that plaintiff's face was close to the gap at the bottom of the cell door. Accord Watts v. McKinney, 394 F.3d 710, 712-13 (9th Cir. 2005) (finding that prison guard could not reasonably believe that he could lawfully kick the genitals of a prisoner who was on the ground and in handcuffs).

/

5

III.

"The PLRA mandates that inmates exhaust all available administrative remedies before filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983." Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc) (citing Woodford v. Ngo, 548 U.S. 81, 85 (2006)).  To the extent that the evidence in the record permits, the appropriate procedural device for pretrial determination of whether administrative remedies have been exhausted under the PLRA is a motion for summary judgment under Rule 56. Id. at 1168. The burden is on the defendant to prove that there was an available administrative remedy that the plaintiff failed to exhaust. Id. at 1172.  If the defendant meets that burden, the burden shifts to the prisoner to present evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. Id. The ultimate burden of proof remains with the defendant, however. Id.

If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. Id. at 1166.  But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. Id.

The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Although once within the discretion of the district court, exhaustion in prisoner cases covered by § 1997e(a) is now mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002).  All available remedies must now be

exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Id. (citation omitted). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id.; Booth v. Churner, 532 U.S. 731, 741 (2001). Similarly, exhaustion is a prerequisite to all prisoner suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532. PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies. Woodford v. Ngo, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." Id. at 90.

The California Department of Corrections and Rehabilitation (CDCR) provides any inmate or parolee under its jurisdiction the right to appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). CDCR's appeal process consists of three formal levels of appeals: (1) first formal level appeal filed with one of the institution's appeal coordinators, (2) second formal level appeal filed with the institution head or designee, and (3) third formal level appeal filed with the CDCR director or designee. Id. §§ 3084.7, 3084.8. A prisoner exhausts the appeal process when he completes the third level of review. Id. § 3084.1(b); Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010). A "cancellation or rejection" of an appeal "does not exhaust administrative remedies." Cal. Code Regs. tit. 15, § 3084.1(b).

Defendant properly raises failure to exhaust in a Rule 56 motion for summary judgment and argues that plaintiff failed to properly exhaust available

7

administrative remedies as to his excessive force claim before filing suit. Defendant specifically argues that despite knowing how to use CDCR's inmate appeal process, plaintiff did not submit an appeal in connection with his excessive force claim. In support, defendant submits declarations and documentary evidence showing that although plaintiff filed thirty-four inmate appeals while he was at PBSP, and exhausted the vast majority of them thru the third level of review, none of the appeals concerned plaintiff's claim that defendant used excessive force against him on February 29, 2012. This is enough for defendant to meet his burden of showing that there was an available administrative remedy that plaintiff failed to exhaust in connection with his excessive force claim against defendant. See Albino, 747 F.3d at 1172. The burden now shifts to plaintiff to present evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. See id.

In opposition to defendant's motion for summary judgment for failure to exhaust available administrative remedies, plaintiff submits a declaration stating, under penalty of perjury, that on "February 29, 2012, I gave my third-watch unit staff my 602 staff complaint-appeal [concerning the excessive force claim at issue] for delivery to the inmate appeals office." Dkt. #68-2 at 2. Plaintiff sent written inquiries about the status of his complaint-appeal to the inmate appeals office on "March 15, 2012, April 5, 2012, April 26, 2012 and May 13, 2012," but never received a response. Id. Plaintiff consequently "authored a new 602 staff complaint-appeal and sent it to my brother" asking him to mail it to PBSP's inmate appeal office. Id. Plaintiff's brother did, but there is no indication that the complaint-appeal was filed, "screened out and/or returned to me." Id. at 2-3. Plaintiff argues that prison officials' failure to process his "602 staff complaint-

appeal" left him "with no available administrative remedies." Id. at 3.

Under the law of the circuit, plaintiff's sworn statements that he was thwarted from filing a 602 staff complaint-appeal concerning the excessive force claim at issue meets his burden of production in showing that administrative remedies were not available to him. See Williams v. Paramo, 775 F.3d 1182, 1191-92 (9th Cir. 2015) (plaintiff alleged under penalty of perjury that she first tried to inform correctional officer about safety concern, but that he did not help her and told her, "So what! That is not my problem! That is your problem!"; she then tried to file a grievance and an appeal with another correctional officer, who rejected the grievance and refused to file the appeal). Defendant may not simply rely on the existence of an administrative review process (or claim that plaintiff's sworn allegations are false) to overcome such showing as he carries the ultimate burden of proof of failure to exhaust. See id. at 1192. The motion for summary judgment for failure to exhaust available administrative remedies must be denied. See id. (reversing summary judgment to defendants on issue of exhaustion where defendants evidence did not rebut prisoner's evidence that administrative remedies were not available to her because her filings were rejected by prison officials, nor show that prisoner failed to follow prison procedures).

## IV.

For the foregoing reasons, defendant's motion for dismissal and/or summary judgment for failure to exhaust available administrative remedies (dkt. #52) is DENIED.

The court finds that referral of this matter to the Pro Se Prisoner Settlement Program with Magistrate Judge Vadas is in order and hereby REFERS this matter to Magistrate Judge Vadas for settlement proceedings. All other proceedings are stayed.

1    A settlement conference shall take place within 120 days of the date of
2 this order, or as soon thereafter as is convenient to Magistrate Judge Vadas'
3 calendar. Magistrate Judge Vadas shall coordinate a time and date for the
4 conference with all interested parties and/or their representatives and, within ten
5 (10) days after the conclusion of the conference, file with the court a report
6 regarding the conference.

7    Plaintiff's motion for appointment of counsel (dkt. #74) is DENIED
8 without prejudice to renewing after settlement proceedings have concluded and
9 the court's stay is lifted.

10    The clerk shall provide a copy of this order to Magistrate Judge Vadas.

11 SO ORDERED.

12 DATED: April 28, 2015

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\CR.12\Taylor, D.12-3424.mtd-msj.wpd